# IN THE COURT OF APPEALS OF IOWA

No. 21-0097
Filed February 16, 2022

IN RE THE MARRIAGE OF KEITH OLDENBURGER
AND MICHELE OLDENBURGER

Upon the Petition of
KEITH OLDENBURGER,
    Petitioner-Appellee,

And Concerning
MICHELE OLDENBURGER,
    Respondent-Appellant.

_____

Appeal from the Iowa District Court for Butler County, Gregg R. Rosenbladt,

Judge.


Michele Oldenburger appeals the financial provisions of the decree

dissolving her marriage to Keith Oldenburger. **AFFIRMED AS MODIFIED.**


Lana L. Luhring of Laird & Luhring, Waverly, for appellant.

Benjamin G. Arato of Wandro & Associates, PC, Des Moines, for appellee.


Heard by Vaitheswaran, P.J., and Tabor and May, JJ.

**VAITHESWARAN, Presiding Judge.**

Keith and Michele Oldenburger divorced after thirty-nine years of marriage. On appeal, Michele seeks greater compensation for the value of several farms acquired during the marriage or, in the alternative, a larger spousal support award.

## I.    *Background Facts and Proceedings*

At the time of dissolution, the parties owned seven parcels of land totaling 941 acres. The district court determined "all of the real estate [was] inherited by Keith, except . . . one-fourth interests of Michele in the 'George Oldenburger Farm' and the 'Home Place Farm.'" The court concluded "the inherited land should not be subject to division as marital property." The court granted all seven parcels to Keith, subject to the debt on the parcels. The court awarded Michele (1) $200,000 for her interest in the two land parcels—Oldenburger Farm and Home Place; (2) another $200,000 derived either partially or entirely from the sale of equipment; and (3) a payment of $150,000 within five years, for a total of $550,000. The court also ordered Keith to pay Michele spousal support of $1000 per month for fifteen years and $10,000 towards her trial attorney fees. A post-trial ruling did not alter the financial aspects of the dissolution decree. Michele appealed.

## II.    *Property Division*

Michele challenges the district court's determination that Keith inherited the vast majority of land, as well as the court's refusal to divide the inherited land. She acknowledges that our dissolution-of-marriage statute preliminarily exempts inherited property from the property division but argues some of the property was not inherited. In any event, she notes that the statute permits division of inherited

property if "refusal to divide the property is inequitable to the other party." Iowa Code § 598.21(5), (6) (2019).

On the question of whether inherited property should be divided, the supreme court has cited "[t]he donor's intent and the circumstances surrounding the inheritance or gift" as the controlling factors. *In re Marriage of McDermott*, 827 N.W.2d 671, 678–79 (Iowa 2013). Those circumstances include:

> (1) contributions of the parties toward the property, its care, preservation or improvement[ ];
> (2) the existence of any independent close relationship between the donor or testator and the spouse of the one to whom the property was given or devised;
> (3) separate contributions by the parties to their economic welfare to whatever extent those contributions preserve the property for either of them;
> (4) any special needs of either party;
> (5) any other matter[,] which would render it plainly unfair to a spouse or child to have the property set aside for the exclusive enjoyment of the donee or devisee.

*Id.* at 679 (quoting *In re Marriage of Goodwin*, 606 N.W.2d 315, 319 (Iowa 2000)); *see also* Iowa Code § 598.21(5) (setting forth criteria for dividing property including "the length of the marriage"). We review the record de novo.

### A. Classification of Real Estate

#### 1. Sluitters Farm and Across the Highway

Michele begins with two land parcels, "Sluitters Farm" and "Across the Highway." Those properties were owned by a partnership created by Keith and his father, Everett ("E & K Partnership"). Initially, each had a fifty-percent interest in the partnership. Upon Everett's death, Keith inherited half of his father's fifty-percent interest, leaving him with a seventy-five percent interest in the partnership.

Keith's son inherited the other half of Everett's fifty-percent interest. Eventually, Keith bought out his son's interest, and the partnership was dissolved.

Michele maintains she had an interest in the property contributed to the partnership when it was created as well as an interest in the property acquired from their son. Her interest, she asserts, undermines Keith's contention that the two parcels were entirely inherited. On our de novo review, we agree.

Keith and his father created the partnership two years after Keith and Michele married. Although Keith testified Michele had no ownership interest in the partnership, Keith conceded he contributed a combination of premarital and marital assets to the partnership, including cattle, farm equipment, and corn. There is also no question Keith funded the partnership with a loan cosigned by Michele. Finally, Michele helped pay off outstanding debts when the partnership was dissolved and helped finance the buyout of Keith's son's interest in the partnership.

Keith acknowledged Michele helped finance the buyout of their son's interest in Sluitters Farm. Indeed, until the day before trial, Keith listed Michele as part owner of Sluitters Farm.[1] As for Across the Highway, Keith testified he inherited the property from his father, but agreed Michele was part owner of the parcel. In short, he essentially conceded that, although Michele was not a named partner in E & K Partnership, she made significant financial contributions to the partnership.

We conclude Keith inherited the twenty-five percent interest in E & K Partnership—and a concomitant portion of Sluitters Farm and Across the

---

[1] His fourth amended affidavit of financial status removed Michele as part owner of Sluitters Farm.

Highway—that Everett devised to Keith at his death.[2]  The remaining seventy-five percent interest in E & K Partnership—and a concomitant portion of Sluitters Farm and Across the Highway—were uninherited marital assets.  Michele contends she should have been compensated for half the value of the uninherited seventy-five percent of both properties—or 37.5 percent.  We find Michele is entitled to 37.5 percent of the net value of those properties as uninherited marital assets.

### 2.    Old Place Farm

Michele next argues the district court misclassified Old Place as inherited property.  Although Keith's mother devised the parcel to him after the expiration of a life estate in her husband Everett, there was a condition—Keith was to pay his sister sixty-seven percent of the parcel's value.  Keith took out a loan with Michele to fulfill that obligation.  The joint payoff, Michele asserts, rendered Old Place uninherited property.  Keith counters that the payoff requirement was not truly a condition of his mother's will.

We need not wade into an interpretation of the will because the deed to the property stated it was "subject to a cash payment . . . of 67% of the appraised value at the time of the death of Everett Oldenburger."  In other words, Keith's acquisition of title to the parcel was conditioned on the payment to his sister, financed by Keith and Michele jointly.  Keith admitted Michele was a cosigner on the underlying loan that resulted in a payment to his sister of at least $640,000.

We conclude Keith inherited Old Place from his mother but Michele had a significant interest in the property by virtue of her signature on the note.  That

---

[2] Michele does not seek an equitable share of Keith's twenty-five percent inherited interest.

interest rendered it unjust not to include the property among the assets subject to division. *See McDermott*, 827 N.W.2d at 679 (considering "contributions of the parties toward the property, its care, preservation or improvement" and "any other matter[,] which would render it plainly unfair to a spouse or child to have the property set aside for the exclusive enjoyment of the donee or devisee"). We also agree with Michele's request for 33.5 percent of the net value of Old Place.

### 3. Home Farm and 40 Acres

Michele concedes these two parcels were devised to Keith, but she argues her "perseverance and contributions to a 39-year marriage, as well as" her "close relationship with the Testator" rendered the parcels divisible. On our de novo review, we agree.

Michele testified to having a close relationship with Keith's mother and grandmother. She spoke to Keith's mother "every day on the phone," helped her with her cleaning, took her to her appointments, took her shopping, exchanged recipes, and was present when the doctor diagnosed her with cancer. Michele and Keith's son confirmed that Michele "had a good relationship" with Keith's mother. He noted that his mother "went over there and helped her quite a bit."

As for Keith's grandmother, Michele testified she would take her "to her appointments[,] . . . take her grocery shopping," "mow[ ] her lawn," feed her lambs, "buy her clothes," and "[d]o whatever she needed." Michele even drove her to the hospital during a snow storm when the ambulance could not get her. She performed these tasks for approximately twenty-five years.

Keith minimized Michele's role in his family's daily life. At the same time, he admitted she was present for his mother's cancer diagnosis, made meals for family members, and "drove [his] grandmother around different times."

We are persuaded Michele actively engaged with Keith's family throughout the lengthy marriage. We conclude her involvement rendered it unjust to exclude Home Farm and 40 Acres from the property subject to division.

Michele does not specify the amount of compensation she should receive for these parcels, but notes "the parties had lived there and used it since they married" and "remodeled the home twice and added a building with funds from the newly dissolved partnership." We conclude she is entitled to half the net value of these parcels.

### 4. Oldenburger's Farm and Home Place

Michele indisputably had a twenty-five-percent ownership interest in these two parcels. The district court determined she "should get at least one-fourth of the value of those properties." On appeal, Keith does not dispute that Michele has a one-fourth interest in the value of these properties.

### 5. Summary of Classifications

A summary of Michele's interest in each of the seven parcels is as follows:

**Table 1.**

| Parcel | Michele's Interest |
|---|---|
| Sluitters Farm | 37.5% of net value |
| Across the Highway | 37.5% of net value |
| Old Place | 33.5% of net value |
| Home Farm | 50% of net value |
| 40 Acres | 50% of net value |
| Oldenburger Farm | 25% of net value |
| Home Place | 25% of net value |

### B.    Calculation of Property Settlement

Both parties submitted land appraisals.   The court ultimately accepted Keith's appraisals, finding they were "more thorough, closer attention was given to the building and improvements, and the comparables seem more appropriate." We give weight to the district court's finding and use Keith's appraisals for purposes of calculating the property settlement.[3]

Of Keith's four appraisals, three assessed multiple parcels within a single appraisal.  We have prorated the value of each parcel as follows:

**Table 2.**

| Parcel | Keith Appraisal | Acres | Value per Acre[4] | Value per Parcel |
|---|---|---|---|---|
| Home Place | $3,050,000 | 114.12 | $8235.23 | $939,804.51 |
| Across Highway | | 256.24 | $8235.23 | $2,110,195.49 |
| Sluitters Farm | $855,000 | 101.32 | $6120.70 | $620,148.90 |
| 40 Acres | | 38.37 | $6120.70 | $234,851.10 |
| Old Place | $2,105,000 | 195.20 | $7747.52 | $1,512,315.05 |
| Oldenburger Farm | | 76.50 | $7747.52 | $592,684.95 |
| Home Farm | $1,526,400 | 159.00 | $9600.00 | $1,526,400.00 |
| **Total** | | 940.75 | | $7,536,400[5] |

Several of the parcels had debt associated with them.  The debt associated with each of those parcels is listed below:

---

[3] This court "give[s] weight to the factual findings of the district court . . . [although] we are not bound by them."  *In re Marriage of Eastman*, No. 20-1677, 2021 WL 5106074, at *3 (Iowa Ct. App. Nov. 3, 2021) (citing Iowa R. App. P. 6.904(3)(g)).
[4]  The "Value per Acre" column takes the appraised value divided by the acres for all parcels included in the appraisal.  For example, Home Place and Across the Highway were appraised together for $3,050,000. The total acreage for these parcels is 370.36 acres (114.12 + 256.24).  The value per acre is $8235.23.
[5]   Keith provided a total appraised value—accepted by the district court—of $7576,486.  Our value differs by $40,086 because Keith used a Cost Approach value as opposed to an Opinion Value for Home Place and Across the Highway.

**Table 3.**

| Parcel | Total Debt | Acres | Debt per Acre | Debt per Parcel |
|---|---|---|---|---|
| Home Place | | 114.12 | $970.30 | $110,730.71 |
| Across Highway | $457.671.41[6] | 256.24 | $970.30 | $248,629.84 |
| Sluitters Farm | | 101.32 | $970.30 | $98,310.86 |
| 40 Acres | $0 | 38.37 | $0 | $0 |
| Old Place | $622,035.89 | 195.20 | $3180.25 | $622,035.89 |
| Oldenburger Farm | $322,677.21 | 76.50 | $4218.00 | $322,677.21 |
| Home Farm | $0 | 159.00 | $0 | $0 |

We calculate Michele's share of the parcels based on the values set forth in Table 2 and Table 3.

### 1.    Sluitters Farm & Across the Highway

Michele is entitled to 37.5% of the net value of these two parcels. In her view, when "using Keith's appraisal" and the "pro rata [debt] figure[ ] urged by Keith and adopted by the Court" that sum is $823,147.32. She (1) uses appraised values of $437,000 for Sluitters Farm[7] and $2,105,000 for Across the Highway; (2) multiplies those figures by 37.5 percent to obtain a total appraised value of $953,250; (3) adopts the district court's calculation of the debt on the two parcels as $346,940.47;[8] (4) multiplies the debt figure by 37.5 percent to arrive at total debt of $130,102.68, as the district court found; and (5) subtracts the debt from the appraised value to arrive at a net value of $823,147.32.

---

[6] Home Place, Across the Highway, and Sluitters Farm were on one loan

[7] It is unclear how she arrived at that figure.

[8] Michele multiplies the pro rata debt figure of $970.30 per acre by 357.56 acres (101.32 acres for Sluitters Farm and 256.24 acres for Across the Highway).

In our view, Michele understates the net value of these properties. Assigning Sluitters Farm an appraised value of $620,148.90 and Across the Highway a value of $2,110,195.49 as disclosed in Table 2, we calculate the total appraised value for these two parcels as $2,730,344.39. 37.5% of that value is $1,023,879.15 rather than $953,250, as proposed by Michele. Subtracting the debt figure adopted by the district court and accepted by Michele, we arrive at a net value for these two parcels of $893,776.47. Michele is entitled to $893,776.47 for these parcels.

### 2. Old Place

Michele is entitled to 33.5% of the net value of Old Place. Michele does not tell us what the number should be. Applying Keith's appraised value of $1,512,315.05 and subtracting debt of $622,035.89 we arrive at a net value of $890,279.16. 33.5% of that value is $298,243.51.

### 3. Home Farm & 40 Acres

Michele is entitled to 50% percent of the net value of these parcels. Again, Michele does not tell us how much she would like for these parcels. We calculate the net value of Home Farm as $1,526,400 and the net value of 40 Acres as $234,851.10. The total is $1,761,251.10. Half of that sum is $880,625.55. Michele is entitled to $880,625.55 for these parcels.

### 4. Oldenburger Farm & Home Place

Michele is entitled to 25% of the net value of these parcels. The district court—using Keith's appraisals—calculated a 25% interest in Oldenburger Farm

as $157,468.75 and a 25% interest in Home Place as $98,262.50.[9] The district court also calculated a 25% share of the Oldenburger Farm debt to be $80,669.30 and a 25% share of the Home Place debt to be $27,682.68.[10] The district court's calculations yield a total net value for these two parcels of $147,379.27. Our calculation yields a significantly higher amount. While we agree with the district court's debt calculations, 25% of the appraised values of these parcels as reflected in Table 2 is $148,171.24 for Oldenburger Farm and $234,951.13 for Home Place. We conclude the total net value to which Michele is entitled for these two parcels is $274,770.39.[11]

### 5.      Summary

In sum, we conclude on our de novo review that Michele is entitled to the following:

**Table 4.**

| Parcel | Value of Michele's Interests |
|---|---|
| Sluitters Farm | $893,776.47 |
| Across Highway | |
| Old Place | $298,243.51 |
| Home Farm | $880,625.55 |
| 40 Acres | |
| Oldenburger Farm | $274,770.39 |
| Home Place | |
| **Total** | **$2,347,415.92** |

---

[9] The district court also cited Michele's appraised values of $181,687.50 for Oldenburger Farm and $99,450 for Home Place Farm, but ultimately did not adopt these figures.

[10] The district court noted that these two parcels were used as collateral for operating loan 111317546. That operating loan and other debts assumed by Keith are addressed in the Other Assets below.

[11] Michele calculates her share of these two parcels as $212,476.27. She appears to accept the district court's valuation figures of her share as $157,468.75 and $98,262.60 for a total appraised value of $255,731.25, then subtracts $43,254.98 in debt from that figure. We cannot discern how she arrived at that debt figure.

### C. Other Assets

| Asset | Appraised Value |
|---|---|
| Farm Equipment | $354,150[12] |
| Other Assets (K) | $515,661.27[13] |
| Other Assets (M) | $3000[14] |
| TOTAL | $849,811.27 |

The additional debt listed in Keith's financial affidavit, exclusive of the land debt incorporated into our analysis of the parcels and exclusive of incorrectly classified debts,[15] totaled $1,219,577.23. This additional debt load was assigned to Keith. Michele listed debts totaling $40,495.53, which were all assigned to her. Because Keith's additional debt load significantly exceeded the value of his additional assets, we decline to divide the remaining assets, and we affirm the district court's allocation of the debts. We also decline Michele's request for rental income from the Oldenburger Farm or a division of the value of growing crop—neither of which was assigned a value by the parties or court.

We conclude Keith is obligated to pay Michele a total property settlement of $2,347,415.92 arising from her interest in the seven parcels of land. Keith shall

---

[12] The district court adopted the values proposed by Michele's appraiser. According to Michele's trial papers, the figure included a deduction for "vehicles and items Keith indicates he does not own." Giving weight to the district court's finding, we adopt her figure.

[13] A certificate of deposit value was listed as a debt on the ground that Michele "wrongfully converted" it. We determine it to be an asset with a value of $23,000.

[14] Each party was awarded his or her own vehicles and any associated debt and the division of personal property was not at issue.

[15] For example, Keith classified stolen meat as a debt.

make the payment in five equal annual installments, with the first to be paid within 180 days after procedendo in this appeal issues and each subsequent payment to be made on the one-year anniversary of that date.

### III. *Spousal Support*

Michele argues that, if we decline to alter the property division, we should increase her spousal support award. Having increased her share of the property division, we need not consider the issue.

### IV. *Attorney Fees*

Michele asks us to order Keith to pay $10,000 toward her appellate attorney fee obligation. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *McDermott*, 827 N.W.2d at 687. "In determining whether to award appellate attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* Our modification of the property division portion of the dissolution decree leaves Michele in a position to pay her own appellate attorney fees.

**AFFIRMED AS MODIFIED.**